Lawrence H. Reichman, OSB No. 860836
LReichman@perkinscoie.com
Nicholle Winters, OSB No. 054155
NWinters@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Howard Skaist, Esq., OSB No 883482
hskaist@bltg-ip.com
Katherine Ford Horvath, Esq. (admitted pro hac vice)
khorvath@bltg-ip.com
BERKELEY LAW AND TECHNOLOGY
   GROUP, LLP
17933 Evergreen Parkway, Suite 250
Beaverton, OR  97006-7660
Telephone:  503.439.6500
Facsimile:  503.439.6558

Complete list of counsel on signature page

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **MELLAND GROUP, LLC d/b/a nTRUST**, an Oregon limited liability company, and **ALLAIN DE LA MOTTE**,<br><br>Plaintiffs,<br><br>v.<br><br>**BERND H. WEBER, CLAUDE J. CHAUVEAU, AMERICAN GULF FINANCE CORP., ALVION PARTNERS, LLC, WEBER, LLC, AGF REALTY SOLUTIONS, INC., ALEXON HOLDINGS INTERNATIONAL LTD., TIMEDATA CORPORATION, TIME DATA HOLDINGS, LLC**, and **DOES 1-10**,<br><br>Defendants. | No. CV'08-957-AC<br><br>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION<br><br>**EXPEDITED HEARING REQUESTED** |

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ................................................................................. 1

III.  ARGUMENTS AND AUTHORITIES .................................................................. 4

    A.  Standards for a Preliminary Injunction ................................................... 4

    B.  There is a Strong Likelihood that Plaintiffs Will Prevail on Their Claims ........... 5

        1.  Trade Secret Misappropriation Claim ............................................. 5

            a.  Plaintiffs' Confidential Technology Constitutes Trade Secret Information ........................................................ 6

            b.  Plaintiffs Employed Reasonable Measures to Maintain the Secrecy of Their Confidential Technology .................... 7

            c.  Defendants Misappropriated Plaintiffs' Trade Secret Information ...................................................................... 8

        2.  Trademark (Lanham Act § 43(a)) Claim ....................................... 14

        3.  Breach of Contract Claim ............................................................. 17

        4.  Breach of Fiduciary Duty Claim ................................................... 18

            a.  Defendants Weber and Chauveau, as Officers of Plaintiff Melland, Owed Fiduciary Duties to Plaintiff Melland ........... 18

            b.  Defendants Weber and Chauveau Breached Their Fiduciary Duty of Loyalty to Plaintiff Melland ............................ 19

    C.  Defendants' Conduct Has Caused—and Will Continue to Cause— Plaintiffs to Suffer Irreparable Harm ................................................... 20

    D.  The Balance of Hardships Favors Immediate Injunctive Relief ................ 23

IV.  CONCLUSION ............................................................................................... 24

i-  MEMORANDUM IN SUPPORT OF PLAINTIFFS'
    MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## TABLE OF AUTHORITIES

Page

**Cases**

*Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, (D. Or. 2004) .................................................. 5

*Alaska v. Native Village of Venitie*, 856 F.2d 1384 (9th Cir. 1988) ................................................ 5

*Alexander & Alexander Benefit Servs, Inc. v. Benefit Brokers & Consultants, Inc.*, 756 F. Supp. 1408 (D. Or. 1991) .................................................................................. 4, 19, 20, 21

*Am. Timber & Trading Co. v. Niedermeyer*, 558 P.2d 1211 (Or. 1976) ...................................... 19

*Amvac Chem. Corp. v. Termilind, Ltd.*, 1999 Lexis 20151 (D. Or. Aug 3, 1999).......................... 6

*Aquirre v. Chula Vista Sanitary Services*, 542 F.2d 779 (9th Cir. 1976) ...................................... 5

*Bennett v. Farmers Ins. Co.*, 26 P.3d 785 (Or. 2001) .................................................................... 18

*Boeing Co. v. Sierracin Corp.*, 738 P.2d 665 (Wash. 1987)........................................................... 24

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) ....... 15, 16

*Computer Assocs. Int'l, Inc. v. Bryan*, 784 F. Supp. 982 (E.D.N.Y. 1992) ................................... 22

*Conway v. Pacific Univ.*, 924 P.2d 818 (Or. 1996) ....................................................................... 18

*Dial Temporary Help Serv., Inc. v. Shrock*, 946 F. Supp. 847 (D. Or. 1996)............................. 6, 8

*E. I. duPont de Nemours & Co. v. Am. Potash & Chem. Corp.*, 200 A.2d 428 (Del. Ch. 1964)............................................................................................................................................ 21

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61 (2d Cir.1984) ............................... 22

*FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500 (5th Cir. 1982)...................................................... 21

*Gable-Leigh, Inc. v. North Am. Miss*, 2001 Lexis 25614 (C.D. Cal. April 13, 2001) ................. 21

*Georgetown Realty v. Home Ins. Co.*, 831 P.2d 7 (Or. 1992)....................................................... 18

*Gilder v. PGA Tour, Inc.*, 936 F.2d 417 (9th Cir. 1991)................................................................. 5

*Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054 (9th Cir. 2007) ............................... 4

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ............................................ 16

*Haines Mercantile Co. v. Highland Gold Mines Co.* 88 P. 865 (Or. 1907)................................... 18

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Hampton Tree Farms, Inc. v. Jewett*, 892 P.2d 683 (Or. 1995)......................................................... 18

*Horton v. Whitehill*, 854 P.2d 977 (Or. Ct. App. 1993)................................................................. 19

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042 (9th Cir. 1998).............. 15

*Klinicki v. Lundgren*, 695 P.2d 906 (Or. Ct. App. 1993)............................................................... 20

*Myers v. Williams*, 819 F. Supp. 919 (D. Or. 1993) ................................................................. 4, 5

*Official Airline Guides v. Goss*, 6 F.3d 1385 (9th Cir. 1993) ....................................................... 16

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867 (9th Cir. 2000)............. 4

*Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007) ........................................................................... 4

*Rodeo Collection. Ltd. v. West Seventh*, 812 F.2d 1215 (9th Cir. 1987) ................................ 16, 17

*Sunrich Food Group, Inc., v. Pacific Food of Oregon, Inc.*, 207 Fed. Appx. 745 (9th Cir. 2006)............................................................................................................................................. 6

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)......................................................... 15

*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989)............................................. 16

**Statutes**

15 U.S.C. § 1125............................................................................................................................. 1

15 U.S.C. § 1125(a)(1)................................................................................................................... 15

15 U.S.C.A. § 1116........................................................................................................................ 17

ORS 646.461 ..................................................................................................................... 9, 11, 13

ORS 646.461(1) .............................................................................................................................. 8

ORS 646.461(2)(a).......................................................................................................................... 8

ORS 646.461(2)(b)-(d) ................................................................................................................... 8

ORS 646.461(2)(d)(B) .................................................................................................................... 9

ORS 646.461(4) ..................................................................................................................... 6, 7, 8

ORS 646.463..........................................................................................................................  5, 23

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# TABLE OF AUTHORITIES
## (continued)

Page

**Other Authorities**

Restatement (3d) of Unfair Competition, § 39 ............................................................... 6

Restatement (Second) of Agency, § 393 ....................................................................... 19

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## I.    INTRODUCTION

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, Plaintiffs Melland Group, LLC d/b/a nTrust ("Melland") and Allain de la Motte ("de la Motte") (together, "Plaintiffs") move this Court for the issuance of a preliminary injunction against Defendants Bernd H. Weber ("Weber"), Claude J. Chauveau ("Chauveau"), American Gulf Finance Corp. ("American Gulf"), Alvion Partners, LLC ("Alvion Partners"), and AGF Realty Solutions, Inc. ("AGF Realty") (collectively, the "Defendants") enjoining Defendants from misappropriating Plaintiffs' trade secrets, infringing Plaintiffs' trademarks under Section 43(a) of the Lanham Act (15 U.S.C. § 1125), breaching non-disclosure agreements that forbid Defendants from disseminating Plaintiffs' confidential and proprietary information, and breaching Defendants' fiduciary duties to Plaintiffs. Plaintiffs respectfully move this Court on the grounds (among others) that unless and until Defendants are enjoined by this Court, Plaintiffs will continue to suffer irreparable harm due to Defendants' misconduct.

## II.    FACTUAL BACKGROUND

The facts supporting Plaintiffs' motion are set forth in their Complaint (Dkt. #1) and in the Declarations of Allain de la Motte, Robert West, Brad Henshaw, and Jon S. Crouse, including the exhibits attached thereto, filed concurrently herewith.

Plaintiffs provide financial consulting services, offering novel and innovative financial structures, strategies and products to banks, financial institutions and companies seeking innovative financing, as well as to the investment community at large. [Declaration of Robert M. West ("West Declaration") at ¶ 4; Declaration of Allain de la Motte ("de la Motte Declaration") at ¶ 3.]

De la Motte is the inventor of novel financial technology, including (i) "Trust-Linked Banking" technology incorporating a debit card product that pays a trust dividend on investments held in trust (e.g., the "Trust-Linked Debit Card"); (ii) institutional capital enhancement funding

1-  MEMORANDUM IN SUPPORT OF PLAINTIFFS'
    MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

("ICEF") technology; (iii) complex "Riskless Principal" or "Principal-Protected" investment structuring methods and systems; and (iv) various other finance-related and/or profit generation activities, proprietary systems, methods and processes. [de la Motte Declaration at ¶ 4; West Declaration at ¶ 5.] Melland is and has been teaming with de la Motte to monetize and market the confidential and proprietary financial engineering technologies created by de la Motte. [*Id.*] United States, international and foreign patents are pending for some of de la Motte's technologies. [*Id.*] The de la Motte technologies also include trade secret information, such as confidential and proprietary financial tools implementing the financial technologies, including cost data, formulas, compilations, methods, techniques, processes, know-how, information about customer particularities and preferences, pricing and margin information, keys for implementing the technologies for particular applications, spreadsheets, drawings, flowcharts, diagrams, datasheets, deal sheets, term sheets, contracts for implementing different aspects and components of the technologies, and other documents describing and explaining in detail the confidential and proprietary financial technologies and structures for financial transactions utilizing de la Motte's technologies. [West Declaration at ¶5; de la Motte Declaration at ¶¶ 5-6.] Melland also owns and safeguards trade secret information pertaining to its financial technologies, an application for trademark and service mark registration for "nTrust," and the unregistered, but registerable, trademarks and service marks "Melland Group," "ICEF," and "Institutional Capital Enhancement Funding (ICEF) Program" used in connection with its financial goods and services. [West Declaration at ¶¶ 6-7; de law Motte Declaration at ¶ 8.] (Melland's and de la Motte's confidential information, technology, and trade secrets are referred to collectively, or in part, as the "Confidential Technology." Likewise, Melland's and/or de la Motte's Confidential Technology and the technology covered by the de la Motte pending patent applications are referred to collectively as the "Proprietary Technology.")

Defendants Weber and Chauveau were officers of and consultants to Plaintiff Melland. [West Declaration at ¶¶ 10, 19.] The entity Defendants are owned and/or controlled by

2- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
   MOTION FOR PRELIMINARY INJUNCTION

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Defendants Weber and/or Chauveau and are their alter egos in that corporate formalities are not followed, separate and distinct books and records are not maintained, they are undercapitalized and/or Weber and/or Chauveau use them as their personal bank accounts. [Complaint at ¶¶ 7-16.] Prior to and associated with their positions at Melland, Defendants executed multiple Confidentiality and Non-Disclosure Agreements ("CNDAs") with Melland. [West Declaration at ¶¶ 10-11, 13, 16 and Exhibits B-E.] Pursuant to the multiple CDNAs, Defendants agreed not to disclose Plaintiffs' Confidential Technology to third persons, absent Melland's authorization. [*Id.*] Defendants also consented to injunctive relief entered in favor of Plaintiffs by a court of competent jurisdiction for Defendants' breaches of the CDNAs. [*Id.*] Pursuant to the CNDAs and their roles as officers of Melland, Plaintiffs disclosed details and intricacies of the Confidential Technology to Defendants Weber and Chauveau. [West Declaration at ¶¶ 12-16.]

After an unsuccessful attempt to convince Plaintiffs to confer a two-thirds interest in the Proprietary Technology upon them, Defendants conspired to take Plaintiffs' Proprietary Technology, decided to "go it alone," resigned from Melland, and misappropriated the Proprietary Technology by using it and disclosing it, without Plaintiffs' authorization, in attempts to solicit and transact business with third parties for Defendants' personal and financial benefit. [West Declaration at ¶¶ 22-32; de la Motte Declaration at ¶¶ 17-26.] To effectuate their theft, Defendants represented to third parties that Plaintiffs' Proprietary Technology was Defendants' technology and placed their own names—to the exclusion of Plaintiffs' names—on documents describing the Confidential Technology. [Declaration of Brad Henshaw ("Henshaw Declaration") at ¶¶ 3-9 and Exhibits A-D; Declaration of Jon S. Crouse ("Crouse Declaration") at ¶¶ 5-6 and Exhibit A.] Defendants' scheme of misappropriating Plaintiffs' Confidential Technology, breaching the CNDAs, infringing Melland's trademark rights and breaching their fiduciary duties has caused (and will continue to cause) Plaintiffs to suffer irreparable harm unless and until enjoined. [Complaint at ¶ 92.]

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## III.    ARGUMENTS AND AUTHORITIES

### A.    Standards for a Preliminary Injunction.

As articulated by the Ninth Circuit, the two alternative standards for evaluating a party's request for preliminary injunctive relief examine the likelihood that the moving party ultimately will succeed with its claim, as well as the type and degree of potential harm to the moving party and to the party against whom such relief is sought:

> The standard for granting a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship to the parties. We have two different criteria for determining whether preliminary injunctive relief is warranted. Under the traditional criteria, a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to the plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). We also use an alternative test whereby a court may grant the injunction if the plaintiff demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in his favor.
>
> The two alternative formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum.

*Raich v. Gonzales*, 500 F.3d 850, 857-58 (9th Cir. 2007) (internal citations, quotation marks, and brackets omitted).

The Ninth Circuit "alternative" test creates a "sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1057-58 (9th Cir. 2007) (quoting *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000)); *see also Myers v. Williams*, 819 F. Supp. 919, 920 (D. Or. 1993); *Alexander & Alexander Benefit Servs, Inc. v. Benefit Brokers & Consultants, Inc.*, 756 F. Supp. 1408, 1411 (D. Or. 1991). Thus, where the balance of hardships is decidedly in favor of injunctive relief, the showing required on the merits may be minimal; conversely, where the probability of success is strong, only a slight tip in the

4-    MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

balance of hardships will permit injunctive relief. *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988) ("If the balance of harm tips decidedly toward the plaintiff, the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly."); *see also Aquirre v. Chula Vista Sanitary Services*, 542 F.2d 779 (9th Cir. 1976). As used in this formula, "'serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo . . . ." *Myers*, 819 F. Supp. at 920 (quoting *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (citation omitted)).

**B.      There is a Strong Likelihood that Plaintiffs Will Prevail on Their Claims.**

Plaintiffs seek injunctive relief to protect themselves from further misappropriation and breaches by Defendants. As demonstrated below, Plaintiffs are likely to prevail on their claims for Trade Secret Misappropriation, Trademark Infringement, Breach of Contract, and Breach of Fiduciary Duties. Such likelihood of success weighs heavily in favor of granting injunctive relief.

**1.      Trade Secret Misappropriation Claim.**

To establish a claim under the Oregon Uniform Trade Secrets Act ("OUTSA"), a plaintiff must show that: "(1) the subject of the claim qualifies as a statutory trade secret; (2) the plaintiff employed reasonable measures to maintain the secrecy of its trade secrets; and (3) the conduct of the defendant constitutes statutory misappropriation." *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1217 (D. Or. 2004). OUTSA specifically provides for injunctive relief, including an injunction to prevent "[a]ctual or threatened misappropriation" and a mandatory injunction to compel "affirmative acts" (such as the return of all original or copied materials). See ORS 646.463. As demonstrated below, Defendants' misappropriation constitutes a violation of OUTSA.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**a.    Plaintiffs' Confidential Technology Constitutes Trade Secret Information.**

OUTSA defines a trade secret as "information, including a *drawing*, cost data, customer list, *formula*, pattern, compilation, program, device, *method*, *technique* or *process* that: (a) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." ORS 646.461(4) (emphasis added). Oregon recognizes that trade secrets "can include 'know-how necessary to perform a particular operation or service.'" *Amvac Chem. Corp. v. Termilind, Ltd.*, 1999 Lexis 20151, at *23 (D. Or. Aug 3, 1999) (quoting Restatement (3d) of Unfair Competition, § 39 cmt. d). Trade secret information also may include information about customer particularities and preferences, customer lists, where such lists are not publicly known or readily obtainable by mere observation or public sources, and pricing and margin information. *Dial Temporary Help Serv., Inc. v. Shrock*, 946 F. Supp. 847, 854 (D. Or. 1996) (information concerning customer satisfaction with services provided is protectable trade secret); *see also Sunrich Food Group, Inc., v. Pacific Food of Oregon, Inc.*, 207 Fed. Appx. 745, 748 (9th Cir. 2006).

Plaintiffs' Confidential Technology includes confidential and proprietary financial tools implementing their financial technologies, such as cost data, formulas, compilations, methods, techniques, processes, know-how, information about customer particularities and preferences, pricing and margin information, keys for implementing the technologies for particular applications, spreadsheets, drawings, flowcharts, diagrams, datasheets, deal sheets, term sheets, contracts for implementing different aspects and components of the technologies, and other documents describing and explaining in detail the confidential and proprietary financial technologies and structures for financial transactions utilizing the de la Motte technologies. [de la Motte Declaration at ¶¶ 4-6; West Declaration at ¶¶ 5-7.]

6-    MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax:  503.727.2222

Plaintiffs derive independent economic value, actual or potential, from having the Confidential Technology not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. [de la Motte Declaration at ¶ 9; West Declaration at ¶ 9.] Indeed, if the Confidential Technology were generally known to the public, it would be of little value because anyone would be able to use it for free. The Defendants expressly acknowledged the value of the Confidential Technology in their executed CNDAs. *See* Section 10 of each CNDA (attached as Exhibits B-E to the West Declaration).

Defendants also tacitly acknowledged the value of the Confidential Technology when, in circulating their own Deal Sheets—incorporating Confidential Technology stolen from Plaintiffs and content copied directly from Plaintiffs' documents without attribution—they included the notation "Confidential" at the top of each page, stated on the first page that "Information herein is protected by [a] Confidentiality Agreement," and stated at the bottom of each page that "This document may not be shared, divulged, copied or transmitted to anyone not authorized by [Defendant] Alvion Partners LLC." [*See* Henshaw Declaration, Exhibit C.] In light of their express acknowledgment of the value of the Confidential Technology, and their personal attempts to prevent third parties from disclosing that same information after Defendants misappropriated it from Plaintiffs and attempted to pass it off as their own, Defendants cannot now be permitted to deny that the Confidential Technology has value. The first prong of the ORS 646.461(4) test for determining whether information is a trade secret, therefore, is satisfied.

  **b.** **Plaintiffs Employed Reasonable Measures to Maintain the Secrecy of Their Confidential Technology.**

As required by ORS 646.461(4), Plaintiffs have made reasonable efforts to maintain the secrecy of their Confidential Technology. Specifically, Plaintiffs require Melland employees, consultants and third parties to execute CNDAs in order to access the Confidential Technology. [de la Motte Declaration at ¶ 9; West Declaration at ¶ 9 and Exhibits B-G.] The CDNAs required Defendants to (i) maintain the confidentiality of the Confidential Technology and limit

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

its disclosure; (ii) not duplicate and/or distribute the Confidential Technology for any purpose other than Melland's legitimate business purposes; and/or (iii) not use, discuss and/or disclose the Confidential Technology for *any* purpose without prior written approval of Melland.  [West Declaration, Exhibits B-E (emphasis added).]

Under OUTSA, executing such a confidentiality agreement can constitute a reasonable effort to maintain secrecy.  *See Dial*, 946 F. Supp. at 854 (finding that oral confidentiality agreement satisfied this requirement).  Plaintiffs also use computer passwords and encryption technology to prevent the accidental or unauthorized disclosure of their Confidential Technology.  [West Declaration at ¶ 9; de la Motte Declaration at ¶ 9.]  Plaintiffs also carefully screen and limit potential recipients to whom they will even allow disclosure of the Confidential Technology under a non-disclosure agreement.  [*Id.*]  Accordingly, Plaintiffs' Confidential Technology meets the second prong of the ORS 646.461(4) test and, therefore, is protectable trade secret information under OUTSA.

> c.    **Defendants Misappropriated Plaintiffs' Trade Secret Information.**

Oregon law provides that misappropriation occurs when a person acquires a trade secret, but knows or has reason to know that the acquisition was by improper means. ORS 646.461(2)(a).  Improper means includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy and/or espionage through electronic or other means.  ORS 646.461(1).  Misappropriation also occurs when a person discloses or uses a trade secret without express or implied consent.  ORS 646.461(2)(b)-(d).

Defendants acquired Plaintiffs' trade secret information by virtue of Weber's and Chauveau's role as officers of and consultants to Melland.  [West Declaration at ¶¶ 10-20.] Defendants knew that they were bound to keep this information in strict confidence, at least by virtue of their multiple CDNAs, which Defendants signed shortly before commencing their

8- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

respective relationships with Plaintiffs.[1] [West Declaration at ¶¶ 10-20 and Exhibits B-E.]
Defendants were fully informed then, and remained informed throughout their relationship with
Plaintiffs, that Plaintiffs' Confidential Technology are Plaintiffs' trade secrets, which Defendants
were under a duty not to misuse or disclose. [*Id.*] Defendants, however, willfully and
wrongfully used and disclosed Plaintiffs' Confidential Technology in ways that blatantly violated
the CNDAs and/or were not authorized by Melland, including (i) calling on, soliciting and/or
taking away Melland's customers and/or prospective customers, and (ii) recruiting and/or
attempting to recruit one another. [Complaint at ¶ 49.]

   Furthermore, and completely independent of the CNDAs, Defendants Weber and
Chauveau owed duties of secrecy to Plaintiff Melland in their capacities as officers of Melland.
*See generally* discussion at Section 4 *infra*. This fiduciary duty created "circumstances giving
rise to a duty to maintain [the] secrecy or limit [the] use" of Melland's trade secrets.
ORS 646.461(2)(d)(B). By breaching this duty, Weber and Chauveau engaged in "improper
means" as defined by OUTSA. The disclosure and use of Plaintiffs' Confidential Technology,
therefore, constitutes "misappropriation" within the meaning of ORS 646.461.

   **(i)    Defendants Used Plaintiffs' Confidential Technology to Call
           on, Solicit and/or Take Away One or More of Plaintiffs'
           Customers or Prospective Customers.**

   Defendants used Plaintiffs' Confidential Technology to call on, solicit and/or take away
one or more of Plaintiffs' customers or prospective customers. [Complaint at ¶ 49.]

   **(a)    Defendants Misappropriated Plaintiffs' ICEF Program.**

   Defendants disclosed the Confidential Technology, including detailed information about
Plaintiffs' ICEF Program without Plaintiffs' authorization when they disseminated it to Brad

---

   [1] Defendant Weber executed two CNDAs on behalf of Defendants Alvion Partners and
American Gulf. As such, despite the fact that he did not execute a CNDA in his personal
capacity, Defendant Weber was fully aware of the need to maintain the confidentiality of the
Confidential Technology and, at a minimum, he was responsible for "induc[ing] a breach" of the
duties of Defendants Chauveau, Alvion Partners and American Gulf under their respective
CNDAs.

9-   MEMORANDUM IN SUPPORT OF PLAINTIFFS'
     MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone: 503.727.2000
Fax:  503.727.2222

Henshaw ("Henshaw"), Senior Vice President of Farmer's State Bank in Harrisburg, Illinois. On or about May 22, 2008, Plaintiffs learned that Defendant Weber, on behalf of Defendant American Gulf, communicated with Henshaw regarding details of the ICEF Program and provided to Henshaw ICEF Program terms and a deal sheet describing the terms and structure of the ICEF Program for a proposed transaction involving Alvion Properties, Inc. and Defendant AGF Realty—but notably not involving Plaintiffs. Defendant Weber sent the ICEF information to Henshaw in an attempt to convince Farmer's State Bank to participate as an investor in a transaction using Plaintiffs' Confidential Technology. [Henshaw Declaration at ¶¶ 3-5, 8 and Exhibits A-C; West Declaration at ¶¶ 28-29; de la Motte Declaration at ¶ 22-23.]

Defendants' blatant attempt to steal Plaintiffs' Confidential Technology is evidenced in the writings and emails themselves, where Defendants held out to Henshaw that the Confidential Technology was theirs. [Henshaw Declaration at ¶ 3-5, 8 and Exhibits A-C.] Specifically, Weber represented that the investment structure technology described in the deal sheet was owned by Defendant Alvion Partners. Weber also did not accredit or mention Plaintiffs Melland and/or de la Motte in his email correspondence or in conjunction with the deal sheet, nor does the deal sheet itself mention Plaintiffs. [Henshaw Declaration at ¶ 3-5, 8 and Exhibits A-C.] To add insult to injury, and even though Defendants were well aware of the fact that this was Plaintiffs' confidential information, Defendants disclosed Plaintiffs' Confidential Technology to Farmer's State Bank without the protection of a confidentiality agreement. [Henshaw Declaration at ¶¶ 5, 8.]

Continuing their misappropriation, on or about March 17, 2008, Defendant Weber presented to Henshaw a deal sheet and PowerPoint information that Weber called the AP Invent Program, which contained more of Plaintiffs' Confidential Technology authored by de la Motte. [Henshaw Declaration at ¶ 8 and Exhibits C and D; de la Motte Declaration at ¶¶ 24; West Declaration at ¶ 30.] Again, falsely taking credit for Plaintiffs' Confidential Technology, Defendant Weber did not mention Plaintiffs in reference to the AP Invent Program, but instead,

10- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION
69726-0001/LEGAL14946743.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

represented Plaintiffs' Confidential Technology was Defendant Alvion Partners' investment structure and that he and Defendant Chauveau were managing partners of Defendant Alvion Partners. [Henshaw Declaration at ¶ 8 and Exhibits C and D.]

At no time were Defendants authorized by Plaintiffs to use their Confidential Technology in this malicious and willful manner, for Defendants' own benefit and to the detriment of Plaintiffs. [de la Motte Declaration at ¶¶ 21-24; West Declaration at ¶¶ 27-30.] Because Defendants acquired Plaintiffs' trade secret information through improper means by breach or inducement of a breach of the duty to maintain secrecy created by the multiple CNDAs, by Weber's and Chauveau's roles as officers of Melland, and because they disclosed or used Plaintiffs' Confidential Technology without express or implied consent, Defendants misappropriated Melland's trade secret information within the meaning of ORS 646.461.

### (b) Defendants Misappropriated Plaintiffs' "Card Game" Technology.

Second, Defendants disclosed to Henshaw Plaintiffs' proprietary "Card Game" technology. When Defendant Weber presented confidential details of Plaintiffs' "Card Game" technology to Henshaw, he represented to Henshaw that he invented the "Card Game" and gave no credit to the rightful inventor and owner of the technology, Plaintiff de la Motte. [Henshaw Declaration at ¶ 6.] At no time were Defendants authorized by Plaintiffs to disclose or use Plaintiffs' trade secret information in this malicious and willful manner, claiming credit for it while using it for their own benefit and to the detriment of Plaintiffs. [de la Motte Declaration at ¶ 22, 25.] Because Defendants acquired Plaintiffs' trade secret information (*i.e.*, the Confidential Technology) through improper means by breach or inducement of a breach of the duty to maintain secrecy created via the multiple CNDAs, by Weber's and Chauveau's roles as officers of Melland, and by disclosing and using the Confidential Technology without Plaintiffs' express or implied consent, Defendants misappropriated Melland's trade secret information within the meaning of ORS 646.461.

11- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

(c)    **Defendants Misappropriated Plaintiffs' Confidential Technology.**

Third, as discovered by Plaintiffs on or about November 21, 2008 and September 30, 2008, Defendants disclosed Plaintiffs' Confidential Technology without Plaintiffs' authorization. Specifically, Defendants disclosed Plaintiffs' Confidential Technology to Jon S. Crouse ("Crouse") of Tanglewood Development ("Tanglewood")—a company that Plaintiffs have never done business with and never heard of prior to learning of Defendants' unauthorized disclosure. [West Declaration at ¶ 31; de la Motte Declaration at ¶ 26, 27.]

Without Plaintiffs' knowledge or consent, Weber delivered a letter to Tanglewood on behalf of Defendant American Gulf Finance Corporation regarding a "Real Estate Unit Participation Trust" and in which Weber solicited Tanglewood's participation in a fund involving Defendant AGF Realty Solutions, LLC and a trust entitled "AGFC Investment Banking Trust I," which Weber claimed held the assets of Alvion Properties ("the Letter"). [Crouse Declaration at ¶ 5 and Exhibit A; West Declaration at ¶ 32.] Weber represented that he invented and owned the investment structure and terms for a financial deal involving a real estate trust detailed in the Letter—even though it was composed of a detailed description of the Confidential Technology authored by de la Motte. [de la Motte Declaration at ¶ 26-27.] The Letter is dated September 27, 2007, prior to Weber assuming a role as officer of Melland but after he had executed a CDNA on behalf of Alvion Properties. [West Declaration ¶ 32; Crouse Declaration Exhibit A.] The Letter is nearly a word-for-word copy of a document created by Melland describing the Confidential Technology including specifically a Real Estate Unit Participation Trust (REUPT) that Melland had been working on for an investor group since September 2006. [West Declaration ¶ 32 .] Further evidencing Defendants' misappropriation of Plaintiffs' Confidential Technology, Defendant Weber represents in the Letter that by way of example, as part of the deal, attorneys Nixon Peabody, LLC and Cadwalader, Wickersham & Taft were to be legal advisors, but these were Plaintiffs' attorneys whose services Plaintiffs used with the true REUPT, and those

12- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

attorneys did not represent Defendant Weber or Defendant American Gulf. [Crouse Declaration Exhibit A; West Declaration ¶ 32.]

To add insult to injury, Defendant Weber misrepresents in the Letter that Defendant American Gulf had "licensed access" to Plaintiffs' intellectual property described. [West Declaration at ¶ 34; Crouse Declaration Exhibit A.] However, neither Defendant Weber nor Defendant American Gulf had (nor have ever had) license to Melland and de la Motte's Confidential Technology. [West Declaration at ¶ 34.] In fact, Defendant American Gulf did not have Plaintiffs' permission to access the Confidential Technology (granted only subsequently pursuant to a CDNA) let alone use it for it and Defendant Weber's own benefit, misrepresent that they had license to it, and/or disclose it to Tanglewood. [*Id.*] Not surprisingly since Defendants stole it, despite this fact, the Letter describes Melland's and de la Motte's Confidential Technology without mentioning Melland, nTrust and/or de la Motte. [*Id.*; de la Motte Declaration ¶ 27.] Melland did not authorize Defendants to deliver or disclose the Confidential Technology to Tanglewood, nor did Melland authorize Defendants to disclose or use their trade secret information (*i.e.* the Confidential Technology) in this malicious and willful manner, claiming credit for it and using it for their own benefit and to the detriment of Plaintiffs. [de la Motte Declaration at ¶¶ 26-27; West Declaration at ¶¶ 31-34.] Because Defendants acquired Plaintiffs' trade secret information through improper means by breach or inducement of a breach of the duty to maintain secrecy created via the multiple CNDAs, by Weber's and Chauveau's roles as officers of Melland, and by disclosing and/or using Plaintiffs' trade secret information without express or implied consent, Defendants misappropriated Melland's trade secret information within the meaning of ORS 646.461.

(ii) **Defendants Used Plaintiffs' Confidential Technology to Recruit and/or Attempt to Recruit One Another.**

Defendants used Plaintiffs' Confidential Technology to recruit and/or attempt to recruit one another. [Complaint at ¶ 49.] While engaging Plaintiffs Melland and de la Motte in

13- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

discussions to form a joint venture—the cornerstone of which was to be Plaintiffs' Confidential Technology—Defendants Chauveau and Weber delivered to Plaintiffs a document, entitled "'BrainTrust' Financial Centre (BFC) L.L.C.," which outlined the proposed partnership between the four parties. [West Declaration at ¶ 22; de la Motte Declaration at ¶ 17 and Exhibit A.]

Inherent in the proposal was the requirement that Plaintiffs assign the Confidential Technology to the new venture, thereby effectively conferring one-third ownership interest <u>each</u> in the Confidential Technology to Chauveau and Weber. [*Id.*] In the "properties" of the Microsoft Word version of the "BrainTrust" document, Weber wrote to Chauveau: "[t]he creativity braintrust centre to make money off the 'patents' is in Toronto and NYC - so, let's work hard my friend - I am taking a break now and cook for Monda, I had my 9 hours already - therefore, I would suggest you give it a shot first and we get..." [West Declaration at ¶ 23; de la Motte Declaration at ¶18 and Exhibit B.]

In response to the proposal, de la Motte communicated that he would not assign his patents and/or pending patent applications or the Confidential Technology. As a result, on January 22, 2008, Defendants Chauveau and Weber stated their intention to take the Confidential Technology outright and "go it alone" without Melland. [West Declaration at ¶ 24; de la Motte Declaration at ¶ 19.] On or about that very same day and consistent with their threats, Defendants Weber and Chauveau sent Plaintiffs' trade secret information concerning ICEF to Henshaw (as discussed above – *see* Henshaw Declaration at ¶ 3-5, 8 and Exhibits A-C) while, at the same time, simultaneously resigning from Melland, thereby using Plaintiffs' trade secret information to effectively recruit each other to leave their positions as officers of and consultants to Melland. [Complaint at ¶ 42.]

### 2.    Trademark (Lanham Act § 43(a)) Claim.

Plaintiffs are likely to prevail on their Section 43(a) Lanham Act trademark infringement claim because Defendants have falsely stated the designation of origin for Plaintiffs' Proprietary

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Technology. [Complaint at ¶ 64.] Section 43(a)(1) of the Lanham Act provides, in pertinent part, that:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Here, Defendants falsely represented to one or more of Plaintiffs' prospective customers that Plaintiffs' Proprietary Technology is Defendants' technology. [Complaint at ¶ 64.] Melland uses the unregistered, but registerable, trademarks "ICEF" and "Institutional Capital Enhancement Funding (ICEF) Program" (collectively the "ICEF marks") in conjunction with marketing and providing financial and investment structures, strategies and products.[2] [West Declaration at ¶ 8.] Defendants used Plaintiffs' ICEF marks without authorization, failed to give Plaintiffs' credit for their ICEF technology and, in fact, completely omitted any reference to Plaintiffs, and used their own names in conjunction with the ICEF marks and ICEF technology. [Henshaw Declaration at ¶¶ 3-5, 8 and Exhibits A-C; de la Motte Declaration at ¶¶ 22-24; West Declaration at ¶¶ 28-30.] Thus, Defendants' untrue statements falsely designated the origin of Plaintiffs' ICEF Proprietary Technology.

---

[2] While the ICEF marks are unregistered, "it is common ground that [Lanham Act] § 43(a) protects qualifying unregistered trademarks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The same standard applies to both registered and unregistered trademarks. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n. 6 (9th Cir. 1999) (citations omitted). While § 32 of the Lanham Act covers only registered marks, the provision at issue here —§ 43 — protects against infringement of unregistered marks and trade dress, as well as registered marks. *See, e.g., Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046 (9th Cir. 1998).

15- MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Defendants' false material statements deceived or caused confusion and/or mistake on the part of (and/or had the tendency to deceive, cause confusion and/or mistake) customers and/or prospective customers regarding the origination of Plaintiffs' Proprietary Technology. [Complaint at ¶ 65.]  The likelihood of confusion is the central element of trademark infringement, and is best recast as the determination of whether "the similarity of the marks is likely to confuse customers about the source of the products." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (quoting *Official Airline Guides v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993)).  "Likelihood of confusion requires that confusion be probable, not simply a possibility. It is the totality of facts in a given case that is dispositive." *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987) (citations omitted).

Here, the ICEF marks used by Defendants without authorization are ***identical*** to Plaintiffs' ICEF marks: "ICEF" and "Institutional Capital Enhancement Funding (ICEF) Program." [West Declaration at ¶ 8, 28-30; Henshaw Declaration Exhibit C.]  Further, Defendants held out to Farmer's State Bank that they owned the ICEF technology. [Henshaw Declaration at ¶¶ 3-5, 8.]  Defendants' untrue statements, made in interstate commerce, that they owned the ICEF technology were blatantly designed to mislead Farmer's State Bank and, in fact, confused Farmer's State Bank about the true source of the ICEF technology.  As such, Plaintiffs are likely to succeed on the merits of their trademark infringement claim.

In a trademark infringement claim, "...irreparable injury may be presumed from a showing of likelihood of success on the merits...". *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999)  This presumption effectively conflates the dual inquiries of this prong into the single question of whether a plaintiff has shown the likelihood of success on the merits.  Thus, once a plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir. 1989)

16- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

(citing *Rodeo*, 812 F.2d at 1220). Here, Plaintiffs are likely to prevail on the merits of their trademark claim, and, thus, have also demonstrated irreparable harm for that claim.

Because Plaintiffs have shown a likelihood of success on the merits of their trademark infringement claim, Plaintiffs are entitled to the equitable remedies identified in Section 34 of the Lanham Act (15 U.S.C.A. § 1116) including, for example, a preliminary injunction, an accounting and an identification of any and all instances of Defendants' unauthorized use of Plaintiffs' trademarks, including identification of the mark used and parties receiving the infringing materials.

### 3.     Breach of Contract Claim.

As discussed above, in the CNDAs Defendants agreed not to duplicate or distribute Plaintiffs' Confidential Technology and not use such Confidential Technology for any purposes other than as expressly authorized by Plaintiff Melland. [West Declaration Exhibits B-E at § 2.] Defendants agreed that they had not been given permission to utilize the Confidential Technology in any way not specifically authorized by the CNDAs, including developing any product or service substantially similar to Melland's program. [*Id.* at § 6.] Defendants further agreed to return all trade secrets and Confidential Technology to Plaintiff Melland at its request. [*Id.* at § 5.] In addition, Defendants agreed as follows:

> [T]he disclosing party [Melland] shall have the right…and, by executing this Agreement, the receiving party [Defendant] hereby consents, to the entry in any court having jurisdiction of a temporary or permanent restraining order or injunction restraining or enjoining the receiving party from any violation of this Agreement.

[*Id.* at § 10.]

Defendants breached the CNDAs by both disclosing and using Plaintiffs' Confidential Technology without Melland's authorization at the very least with Farmer's State Bank and Tanglewood Development, as discussed above. [Henshaw Declaration at ¶¶ 3-8; Crouse

17- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Declaration at ¶ 5.] Accordingly, pursuant to the CNDAs, Plaintiff Melland is entitled to injunctive relief to which Defendants have consented.

### 4.    Breach of Fiduciary Duty Claim.

Defendants' misappropriation of Plaintiffs' Confidential Technology is contemptible under any circumstances, but it is particularly odious in light of the special fiduciary duties that Defendants Weber and Chauveau owed to Melland as officers. Defendants' misappropriations violated these fiduciary duties and accordingly expose Defendants to the additional claim of breach of fiduciary duty, which serves as an independent ground for preliminary injunctive relief.

### a.    Defendants Weber and Chauveau, as Officers of Plaintiff Melland, Owed Fiduciary Duties to Plaintiff Melland.

Fiduciary duties arise where the parties are in a "'special relationship'" in which one party has "some obligation to pursue the interests of the other party," *Conway v. Pacific Univ.*, 924 P.2d 818, 822 (Or. 1996), such as a principal-agent relationship, *see, e.g., Hampton Tree Farms, Inc. v. Jewett*, 892 P.2d 683, 694 (Or. 1995), or where one party controls the subject matter of the relationship, *see, e.g., Georgetown Realty v. Home Ins. Co.*, 831 P.2d 7, 14 (Or. 1992) (involving duty of liability insurer to defend claims). Thus, where "the *nature of the parties' relationship itself* allows one party to exercise control in the first party's best interests" or "allow[s] one party to exercise judgment on the other party's behalf," a special relationship and related fiduciary duties arise. *Bennett v. Farmers Ins. Co.*, 26 P.3d 785, 799 (Or. 2001).

The relationship between a company and its officers is naturally a "special relationship" of this nature, since by definition the interests of the company are confided to its officers. Accordingly, it has long been a basic principle of the law that the officers of a company are its fiduciaries. *See Haines Mercantile Co. v. Highland Gold Mines Co.* 88 P. 865, 866 (Or. 1907) ("It is common learning that the . . . officers of a corporation act in a representative and fiduciary

18- MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

capacity.") *Id.*; *see, e.g., Am. Timber & Trading Co. v. Niedermeyer*, 558 P.2d 1211, 1218 (Or. 1976).

Per Defendants' requests, Plaintiff Melland appointed Defendant Weber to serve as its Senior Vice President of Project Development and appointed Defendant Chauveau to serve as its Chief Information Officer. [West Declaration at ¶¶ 10, 19.] Defendants accepted their appointments, held themselves out to third parties as officers of Melland, and carried and distributed Melland business cards with their titles as officers. [de la Motte Declaration at ¶ 10.] By virtue of these appointments and duties, and the resulting access to Plaintiffs' Confidential Technology, Defendants Weber and Chauveau entered into fiduciary relationships toward Melland.

      **b.**     **Defendants Weber and Chauveau Breached Their Fiduciary Duty of Loyalty to Plaintiff Melland.**

As fiduciaries for Melland, Defendants Weber and Chauveau owed Melland three broad duties: the duty of care, the duty of loyalty and the duty of good faith. Defendants Weber and Chauveau's attempts to solicit banking customers for the benefit of themselves (and the entity Defendants) while, at the same time, serving as officers of Melland were breaches of their fiduciary duty of loyalty to Melland. *See Alexander*, 756 F. Supp. at 1412-13 (citing Restatement (Second) of Agency, § 393).

One aspect of the duty of loyalty is the corporate opportunity doctrine, which "precludes corporate fiduciaries from diverting to themselves business opportunities in which the corporate employer has an expectancy, property interest, or which in fairness should otherwise belong to the corporation." *Alexander*, 756 F. Supp. at 1415. In other words, an officer of a company has "a duty not to usurp [the company]'s business or 'corporate opportunities.'" *Horton v. Whitehill*, 854 P.2d 977, 980 (Or. Ct. App. 1993). The definition of a "corporate opportunity" varies depending upon the duties of the officer concerned, but in the case of a "principal senior

19- MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

executive" (such as Defendant Weber, a Melland Senior Vice President and Defendant

Chauveau, the Melland Chief Information Officer) a corporate opportunity consists of:

> any opportunity to engage in a business activity…that is
> communicated or otherwise made available to him either:
>
> (A) in connection with the performance of his obligations as a
> principal senior executive…or under circumstances that should
> reasonably lead him to believe that the person offering the
> opportunity expects him to offer it to the corporation, or
>
> (B) through the use of corporate information or property, if the
> resulting opportunity is one that the principal senior
> executive…should reasonably be expected to believe would be of
> interest to the corporation.

*Klinicki v. Lundgren*, 695 P.2d 906, 918 (Or. Ct. App. 1993). An officer of a company may not

take personal advantage of a corporate opportunity without first offering that opportunity to the

company in accordance with certain prescribed procedures. *Id.* at 917.

Here, Defendants Weber and Chauveau attempted to take personal advantage of

corporate opportunities at the very least with Farmer's State Bank and Tanglewood

Development. They did not offer the opportunities to Plaintiff Melland, as they secretly

disclosed Melland's Confidential Technology, claiming it was their own and purposely omitting

Melland from the presentations. [Henshaw Declaration at ¶¶ 4-8; Crouse Declaration at ¶¶ 4-5.]

Evidence, such as that provided by Plaintiffs, demonstrating that Defendants Weber and

Chauveau solicited Plaintiffs' prospective customers on behalf of themselves (and the entity

Defendants) during the time that they were officers of Melland demonstrates a probability that

Plaintiffs will prevail on a claim for diversion of corporate opportunities. *See Alexander,* 756 F.

Supp. at 1415.

**C.    Defendants' Conduct Has Caused—and Will Continue to Cause—Plaintiffs to
       Suffer Irreparable Harm.**

Defedants' misappropriation, trademark infringement, and breaches have caused and

continue to cause Plaintiffs irreparable harm. To prevent Plaintiffs from suffering further

irreparable harm, the Court should grant Plaintiffs' Motion for Preliminary Injunction and stop

20- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
    MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Defendants from using and disclosing Plaintiffs' Proprietary Technology and benefiting from their breaches.

Plaintiffs will suffer irreparable harm on many levels unless a preliminary injunction is granted. First, the economic value of Plaintiffs' Confidential Technology misappropriated by Defendants is substantial; it represents twelve (12) years of work by Plaintiffs, including a substantial investment over many years spent marketing Plaintiffs' business and developing their reputation for financial innovation. [de la Motte Declaration at ¶ 4.] If the Confidential Technology is disclosed, its value will be substantially impaired, or perhaps even destroyed, for "[o]nce a trade secret is enabled to fly from its oubliette, it cannot be recaptured. Once lost, it is lost forever. The harm is irreparable." *Gable-Leigh, Inc. v. North Am. Miss*, 2001 Lexis 25614, at *65 (C.D. Cal. April 13, 2001) (citation and quotations omitted); *see also FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 504 (5th Cir. 1982) ("Without a preliminary injunction [the] trade secrets known to [Defendants] will be lost before a full trial on the merits [can] be held.").

Another manner in which Plaintiffs will suffer irreparable harm is vis-à-vis Defendants themselves. In other words, unless Defendants are prevented from using the misappropriated trade secrets and Proprietary Technology and usurped corporate opportunities, Defendants will enjoy an unfair competitive advantage over Plaintiffs as a result of Defendants' wrongdoing. *See, e.g., Alexander*, 756 F. Supp. at 1415 ("Absent injunctive relief, [plaintiff] will suffer irreparable injury in the form of its inability to fairly compete with [defendants] because of the misappropriation and continuing misuse of [plaintiff]'s confidential information by the defendants and because of the continuing injury to [plaintiff]'s business . . . .")

It is a "well-recognized legal principle that equity will enjoin a threatened breach of fiduciary duty." *E. I. duPont de Nemours & Co. v. Am. Potash & Chem. Corp.*, 200 A.2d 428, 432 (Del. Ch. 1964). Defendants Weber and Chauveau, in all fairness, cannot be permitted to compete with Melland through, or to profit from, the corporate opportunities of Melland that they illegally usurped while officers of Melland. Accordingly, they should be enjoined from

21- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2

pursuing these opportunities in the future, and indeed, to ensure that no benefit accrues to them as a result of their past breaches of their duty of loyalty. They also should be enjoined from engaging in any transactions (regardless of whether they involve Plaintiffs' Proprietary Technology) with the financial institutions that were the subjects of these opportunities.

Although Defendants Weber and Chauveau have not been officers of Plaintiff Melland since February 11, 2008, this does not mean that they are free of their fiduciary obligations, or that their future breach of these obligations cannot be enjoined. It is a well-established principle that even after the termination of their status as officers, former officers have no right to utilize confidential information acquired while in a strategic position of trust for their own profit and to the former employer's detriment. Accordingly, Defendants Weber and Melland and the entities that they control should be enjoined from using or disclosing Plaintiffs' trade secrets and Proprietary Technology as any such use or disclosure would constitute a further breach of their ongoing duty of loyalty.

Absent injunctive relief, it also will be impossible to determine Plaintiffs' damages with any reasonable degree of certainty. This alone means that the loss of Plaintiffs' trade secrets and Confidential Technology constitutes irreparable harm. *See, e.g., Computer Assocs. Int'l, Inc. v. Bryan*, 784 F. Supp. 982, 986 (E.D.N.Y. 1992) ("the loss of 'trade secrets' is not measurable in terms of money damages and is thus considered 'irreparable harm'") (citing *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir.1984)). Additionally, if Defendants are permitted to continue pursuing the corporate opportunities they illegally usurped while officers of Melland, Melland itself will not be able to compete fairly with Defendants for such corporate opportunities. The resulting damage to Melland will not readily be susceptible to measurement or quantification. Moreover, if Defendants are permitted to continue using and disclosing Plaintiffs' trade secrets and Confidential Technology, then such disclosures themselves will destroy the value of the trade secrets and Confidential Technology by rendering it public information and thus, worthless.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Finally, in the CNDAs executed by Weber (on behalf of entity defendants) and Chauveau, Defendants expressly acknowledged that disclosure of the trade secrets and Confidential Technology "could cause [Plaintiff Melland] irreparable injury for which no adequate remedy at law exists." *See* Section 10 of each CNDA (West Declaration Exhibits B-E). Defendants, therefore, are estopped from arguing that no irreparable harm will arise from their misappropriation.

**D.      The Balance of Hardships Favors Immediate Injunctive Relief.**

Given Plaintiffs' years of work developing and promoting their Proprietary Technology and rigor to protect their Confidential Technology [de la Motte Declaration at ¶¶ 4-6], and the modest relief requested now, the balance of hardships tilts decisively in favor of injunctive relief. Plaintiffs seek no more than that to which Defendants previously agreed in their CNDAs; to wit, injunctive relief preventing Defendants from (i) using or transferring the trade secrets and Confidential Technology they have improperly taken, (ii) infringing Melland's trademark rights for the ICEF technology, (iii) breaching the CNDAs, and (iv) breaching their fiduciary duties owed to Melland.

Plaintiffs also seek, pursuant to ORS 646.463, that this Court compel affirmative acts on the part of the Defendants, requiring them to return to Plaintiffs all documentary Proprietary Technology and identify all third parties to whom Defendants disclosed or sought to disclose Plaintiffs' Proprietary Technology, including identification of the specific information disclosed. Absent such an accounting, Plaintiffs will be irreparably harmed because Plaintiffs will not be able to assess the extent of Defendants' unauthorized disclosures and appropriate actions necessary to limit further disclosure by those who received Plaintiffs' Confidential Technology. This is a reasonable request and should pose little or no hardship on Defendants.

It should be emphasized that Plaintiffs do not seek to prevent Defendants from earning a living in the financial industry even though Defendants may ultimately be in competition with Plaintiffs. Defendants should remain free to contact new potential customers so long as they do

23- MEMORANDUM IN SUPPORT OF PLAINTIFFS'
      MOTION FOR PRELIMINARY INJUNCTION

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

not disclose or use Plaintiffs' trade secrets or Proprietary Technology.  In short, Plaintiffs simply request that the Court enforce the first principle of equity, *i.e.*, that Defendants should not profit from their own wrongful conduct.  *See Boeing Co. v. Sierracin Corp.*, 738 P.2d 665, 681 (Wash. 1987) ("Failure to enjoin present and future [use of trade secrets] would be inequitable, allowing [defendant] to profit from use of its ill-gotten gains.  Such failure would also subject [plaintiff] to repeated pirating of its trade secrets. An injunction is necessary to prevent misappropriation by [defendant] and others.").

## IV.    CONCLUSION

There is a substantial likelihood of success on the merits of Plaintiffs' claims, Plaintiffs have suffered—and will continue to suffer—irreparable harm unless an injunction issues against Defendants, and Plaintiffs are without an adequate remedy at law.  Under either Ninth Circuit

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

test, Plaintiffs are entitled to preliminary injunctive relief, and respectfully request that this Court grant them a preliminary injunction as described above and set forth in the proposed order submitted herewith.

DATED:  December 5, 2008

s/ Lawrence H. Reichman
Lawrence H. Reichman, OSB No. 860836
LReichman@perkinscoie.com
Nicholle Winters, OSB No. 054155
NWinters@perkinscoie.com
**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Howard Skaist, Esq., OSB No 883482
hskaist@bltg-ip.com
Katherine Ford Horvath, Esq. (admitted pro hac vice)
khorvath@bltg-ip.com
**Berkeley Law and Technology Group, LLP**
17933 Evergreen Parkway, Suite 250
Beaverton, OR  97006-7660
Telephone:  503.439.6500
Facsimile:  503.439.6558

Richard L. Coffman, Esq. (admitted pro hac vice)
**The Coffman Law Firm**
First City Building
505 Orleans St., Ste. 505
Beaumont, TX  77701
Telephone:  (409) 833-7700
Facsimile:  (866) 835-8250
rc@cofflaw.com

Attorneys for Plaintiffs

25-  MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14946743.2