Lawrence H. Reichman, OSB No. 860836
LReichman@perkinscoie.com
Nicholle Y. Winters, OSB No. 054155
NWinters@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

Howard Skaist, Esq., OSB No 883482
hskaist@bltg-ip.com
Katherine Ford Horvath, Esq. (admitted pro hac vice)
khorvath@bltg-ip.com
BERKELEY LAW AND TECHNOLOGY
  GROUP, LLP
17933 Evergreen Parkway, Suite 250
Beaverton, OR 97006-7660
Telephone: 503.439.6500
Facsimile: 503.439.6558

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| MELLAND GROUP, LLC d/b/a nTRUST, an Oregon limited liability company, and ALLAIN DE LA MOTTE,<br><br>Plaintiffs,<br><br>v.<br><br>BERND H. WEBER, CLAUDE J. CHAUVEAU, AMERICAN GULF FINANCE CORP., ALVION PARTNERS, LLC, WEBER, LLC, AGF REALTY SOLUTIONS, INC., ALEXON HOLDINGS INTERNATIONAL LTD., TIMEDATA CORPORATION, TIME DATA HOLDINGS, LLC, and DOES 1-10,<br><br>Defendants. | No. CV'08-957-AC<br><br>DECLARATION OF ALLAIN DE LA MOTTE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

I, Allain de la Motte, declare:

1 - DECLARATION OF ALLAIN DE LA MOTTE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

1.  I am Chairman of Plaintiff Melland Group, LLC d/b/a nTrust ("Melland"). I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction. The following is true to the best of my knowledge, information and belief.

2.  I have been a resident of the State of Oregon since 1992 and currently reside in Hillsboro, Oregon. I was born on the island of Mauritius from French parents, currently carry a Republic of Mauritius Passport and am a resident alien of the United States, having emigrated in 1971.

3.  I have been involved in the financial consulting services industry for twelve years. I specialize in creating novel and innovative financial structures, strategies and products for banks, financial institutions and companies seeking innovative financing, as well as for the investment community at large.

**Intellectual Property**

4.  I am the inventor of a substantial portfolio of financial-based intellectual property. I have invented several novel financial technologies including, for example, "Trust-Linked Banking" technology incorporating a debit card product that pays a trust dividend on deposits held in trust (*e.g.*, the "Trust-Linked Debit Card"); Institutional Capital Enhancement Funding ("ICEF") Program technology; complex "Riskless Principal" or "Principal-Protected" investment structured methods and systems; and various other finance-related or profit generation strategies, and proprietary systems, methods and processes. I have spent considerable time and effort over the past 12 years creating, developing and implementing these new technologies, as well as working to structure financial transactions utilizing my technologies. I have spent considerable time and effort verifying that my financial technologies and structures comply with United States banking regulations and laws. I have many pending patent applications (United States, foreign and international) for my financial technology inventions, including five (5) broad patent families encompassing over 1000 original claims that, in turn, are likely to result in dozens of

2 - DECLARATION OF ALLAIN DE LA MOTTE IN
SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

individual patents being issued. Melland is and has been working with me to monetize and market my technologies.

5.  In addition, I have spent considerable time and effort developing trade secrets, including confidential and proprietary financial tools implementing my financial technologies such as cost data, formulas, compilations, methods, techniques, processes, know-how, information about customer particularities and preferences, pricing and margin information, keys for implementing my technologies for particular applications, spreadsheets, drawings, flowcharts, diagrams, datasheets, deal sheets, term sheets, contracts for implementing different aspects and components of my technologies, and other documents describing and explaining in detail my confidential and proprietary financial technologies and structures for financial transactions utilizing my technologies

6.  Melland also safeguards trade secret information pertaining to its financial technologies, including know-how, information about customer particularities and preferences, pricing and margin information, keys for implementing confidential and proprietary financial technologies for particular applications, spreadsheets, drawings, flowcharts, diagrams, datasheets, deal sheets, term sheets, contracts for implementing different aspects and components of confidential and proprietary financial technologies, and other documents describing and explaining in detail confidential and proprietary financial technologies and structures for financial transactions.

7.  Melland is the applicant for a trademark and service mark, serial no. 77216797, "NTRUST," in connection with goods and services including: electronic data carriers in the form of magnetically encoded debit cards; printed matter and publications, namely, non-magnetically encoded debit cards; and financial services, namely, providing debit card services, administration of the issuance, redemption and processing of cash disbursement, transaction authorization and settlement services in the nature of cash management and electronic case transaction services, formation, operation and termination of trust management accounts, and management of trust

3 - DECLARATION OF ALLAIN DE LA MOTTE IN
SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

accounts that are connected to bank accounts. Melland uses and has used the NTRUST trademark and service mark in commerce in connection with these goods and services.

8. Melland uses in commerce the unregistered trademark and service marks "Melland Group," "Melland Group, LLC," "ICEF," and "Institutional Capital Enhancement Funding (ICEF) Program" in conjunction with financial and investment structures, strategies and products, and providing services for creating financial and investment structures, strategies and products. I will hereafter collectively refer to all of the de la Motte and Melland confidential information, technology and trade secrets described above as the "Confidential Technology." Likewise, I will collectively refer to the Confidential Technology and the technology covered by the pending patent applications together as the "Proprietary Technology."

**Measures to Maintain the Secrecy of the Confidential Technology**

9. Melland and I derive independent economic value, actual or potential, from having the Confidential Technology not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. It is of the utmost importance to my business to maintain the Confidential Technology in the strictest of confidence. As such, Melland and I employ measures to maintain the secrecy of the Confidential Technology. Melland and I do not disclose information about the Confidential Technology without requiring a potential recipient of the Confidential Technology to execute a non-disclosure agreement prohibiting the recipient from disclosing the Confidential Technology. Melland and I carefully screen and limit potential recipients to whom we will allow disclosure of the Confidential Technology under a non-disclosure agreement. Further, I store all trade secret information in a password protected folder on my computer, which requires two levels of passwords authentication to open.

4 - DECLARATION OF ALLAIN DE LA MOTTE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**Defendants' Access to and Non-Disclosure Agreements Regarding The Confidential Technology**

10.     During early May 2007, I, along with Robert M. West ("West"), President of Melland, traveled to New York to meet with several potential licensees of the Proprietary Technology. We stayed with Defendant Claude J. Chauveau ("Chauveau") at Chauveau's combination office/condo in Brooklyn, during which time we spent many hours with Chauveau further explaining the Proprietary Technology in greater detail. Chauveau was at that time a member of Melland Group, LLC, dba nTrust, had the title of Chief Information Officer and carried business cards of the company evidencing his title. For example, and among other things, we shared with Chauveau multiple Excel spreadsheets containing voluminous and complex information pertaining to different aspects of the Confidential Technology. We also shared with him how this Confidential Technology related to technology covered by our pending patent applications.

11.     The week of August 13-17, 2007, I traveled to New York along with Thomas L. Estes ("Estes"), then acting Chief Investment Officer of Melland, and along with Chauveau, met with several potential licensees of the Proprietary Technology, including the Bank of New York Mellon ("BNY Mellon") and MasterCard. During this trip, I discussed with Chauveau the feasibility of Chauveau obtaining a limited use sub-license of a portion of the Proprietary Technology (known as the "card game technology") to assist TimeData, Inc., a company which he 70% owned, with generating badly needed funding, without which Time Data's continued existence was doubtful at best. During these discussions, I revealed to Chauveau further details about the Proprietary Technology and how it functions.

12.     On or about September 1, 2007, Defendant Bernd H. Weber ("Weber") traveled to Melland's corporate offices in Portland, Oregon to meet with me to further learn about the Proprietary Technology and its applications in the marketplace, including its application to the financial situation of a company called Alvion Properties, Inc. ("Alvion Properties"). Pursuant to

5 -   DECLARATION OF ALLAIN DE LA MOTTE IN
      SUPPORT OF PLAINTIFFS' MOTION FOR
      PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

the Confidential Non-Disclosure Agreement ("CNDA") executed by Weber on behalf of Alvion Properties, I continued to disclose to Weber, in detail, the intricacies and nuances of the Confidential Technology.

13. On or about November 26, 2007, I traveled to New York with West, Weber and Estes for two weeks of meetings, the principal purpose of which was to engage The Bank of New York Mellon ("BNY Mellon") to (i) serve as the trustee for Alvion Properties' coal assets as part of implementing the Confidential Technology, and (ii) provide or, alternatively, syndicate with other banks a credit facility against the coal assets.

14. From December 4-8, 2007, Chauveau and Weber engaged me in numerous in depth discussions to further learn about my ideas for implementing the Proprietary Technology as a partial solution to the liquidity crisis in the United States and globally. During the discussions, I revealed to Chauveau and Weber additional intricacies and nuances of the Confidential Technology. My ideas here led to the concept of the ICEF Program utilizing a derivative of technologies described in pending patents that dated back to February 2004, together with the Confidential Technology, which was protected at the time by five (5) CNDAs executed by Chauveau and Weber (and/or their companies and principals).

15. The ICEF Program is a financial product designed to assist banks and other financial institutions with rebalancing their capital adequacy ratios by increasing their Tier II capital base while simultaneously off-loading their toxic and/or distressed portfolios of sub-prime mortgages in 100% arm's length transactions without major having to take-on a massive and immediate capital loss on their books and, in the process, increase shareholder value. I created the initial working document for the practical applications of the technology with subsequent contributions by Chauveau and Weber based upon the Proprietary Technology. Nothing new or substantive was added by either Chauveau or Weber. Their sole contribution was purely from a marketing and presentation standpoint.

6 - DECLARATION OF ALLAIN DE LA MOTTE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

### Defendants' Unauthorized Uses of the Confidential Technology

16.     In January 2008, Melland initiated discussions with representatives of Deloitte and Touche, LLP ("Deloitte") in New York to explore a consultancy with Deloitte regarding specific accounting treatments of the Proprietary Technology as they applied to "banking and accounting regulations" relating to the ICEF Program. I later learned from Alvion Properties that during February 2008, Weber and Chauveau attempted to leverage the Melland/Deloitte relationship by seeking funds from the Alvion Properties' owners to secure a Deloitte opinion and endorsement of the ICEF Program that they, in turn, could use in their efforts to secretly market the Proprietary Technology for their own benefit. Weber and Chauveau did not inform me that they attempted to gain this opinion from Deloitte, nor that they attempted to secretly solicit funding for it from Alvion Properties. Neither I nor Melland authorized Weber and Chauveau to seek funds from Alvion Properties for this opinion letter.

17.     Chauveau and Weber engaged me and West (on behalf of Melland) in discussions to form a joint venture—the cornerstone of which was to be the Proprietary Technology. On or about January 21, 2008, Chauveau and Weber delivered to us a document, entitled "BrainTrust" Financial Centre (BFC) L.L.C.," which outlined the proposed partnership between the four parties. "Fundamental" to the proposal was the requirement that Melland and I assign the Proprietary Technology to the new venture, "Newco", thereby effectively conferring 1/3 ownership interest each in the Proprietary Technology to Chauveau and Weber, a proposal without rational or economic sense from our perspective. A true and correct copy of the "BrainTrust" document is attached as Exhibit A.

18.     In the "Title" field of the "properties" section of this Microsoft Word version of the "BrainTrust" document, we found the following note from Weber to Chauveau: *"[t]he creativity braintrust centre to make money off the 'patents' is in Toronto and NYC - so, let's work hard my friend - I am taking a break now and cook for Monda, I had my 9 hours already - therefore, I would suggest you give it a shot first and we get..."* (my emphasis added) A true and

7 - DECLARATION OF ALLAIN DE LA MOTTE IN
    SUPPORT OF PLAINTIFFS' MOTION FOR
    PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

correct copy of a screenshot of the "properties" section of the "BrainTrust" document showing the text discussed above in the "title" field, as well as a true and correct copy of a Word document of the text copied from the "Title" field so that it may be viewed in its entirety, are attached as Exhibit B.

19. Immediately thereafter, on or about January 22, 2008, on the phone and in writing, I made it clear to Weber and Chauveau that we would not assign the Proprietary Technology to the new venture. At that point, Chauveau and Weber stated their intention to take the Proprietary Technology outright and "go it alone" without me or Melland. As a result, our negotiations to form Newco ceased.

**Defendants' Unauthorized Disclosures of the Confidential Technology**

20. On or about January 18, 2008, I learned that on or about December 19, 2007, while supposedly working on a financial transaction involving Alvion Properties' coal reserves, Weber, without my or Melland's knowledge, surreptitiously obtained an executed CNDA from Commerce Bancorp in Cherry Hill, New Jersey by falsely representing to Commerce Bancorp in a letter that Defendant AGF Realty Solutions and Defendant Alvion Partners, LLC had licenses to the Proprietary Technology. Neither I nor Melland authorized Defendants to falsely represent to Commerce Bank that the Proprietary Technology was their property.

21. On February 11, 2008, I sent individual letters to Weber and Chauveau accepting their resignations that they had communicated to Melland's attorneys, Seward & Kissell, in New York on February 7, 2008, respectively: Weber as Senior Vice President—Project Development and Chauveau as Chief Information Officer of Melland. In the letters, I further reminded Weber and Chauveau that they continued to be bound by their CNDAs with Melland, and warned them not to use and/or disclose the Confidential Technology to anyone else without authorization. True and correct copies of the letters sent to Weber and Chauveau are attached as Exhibits C and D.

8 - DECLARATION OF ALLAIN DE LA MOTTE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

22. On or about May 22, 2008, I learned that, consistent with their threats and stated intentions, Weber and Chauveau secretly provided to Brad Henshaw ("Henshaw"), Senior Vice President of Farmer's State Bank in Harrisburg, Illinois ("FSB"), a portion of the ICEF Program. The portion of the ICEF Program provided to Henshaw contained content that I wrote as part of the Confidential Technology, but did not mention me, nTrust or Melland. I did not authorize Defendants to disclose the Confidential Technology to Henshaw or Farmer's State Bank, nor did I authorize Weber or Chauveau to claim that the ICEF technology was their technology. The ICEF information provided to Henshaw is attached as Exhibits A-C to the Declaration of Brad Henshaw ("Henshaw Declaration"), filed concurrently herewith.

23. I also learned that Defendant Alvion Partners, LLC had delivered an ICEF Program deal sheet to FSB, claiming that it was Alvion Partners, LLC's technology. Weber had led us to believe that Alvion Partners, LLC was formed at the request of, with the knowledge of and with the ownership of the same shareholders as Alvion Properties, Inc., we discovered that, in fact, the owners of Alvion Properties, Inc. had no such ownership in Alvion Partners, LLC and that Alvion Partners, LLC was a company that was 100% owned by Weber to support his secret machinations with the full support of Chauveau who later became a director of Alvion Partners, LLC. The ICEF Program deal sheet contains content that I wrote and it also describes the Confidential Technology. The deal sheet does not mention Melland, nTrust and/or me. I did not authorize Defendants to deliver or disclose the ICEF Program deal sheet to FFSB, nor did I authorize Weber or Alvion Partners, LLC to claim that the ICEF technology was their technology. The ICEF deal sheet is attached as Exhibit C to the Henshaw Declaration.

24. I also learned that Weber had delivered a PowerPoint presentation to FSB discussing an "AP Invent Program," claiming that it was Defendant Alvion Partners, LLC's technology. The content of the PowerPoint presentation describes the Proprietary Technology, including the ICEF technology. The PowerPoint presentation does not mention Melland, nTrust and/or me. I had not authorized Defendants to deliver or disclose information concerning the AP

9 - DECLARATION OF ALLAIN DE LA MOTTE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Invent Program and/or the ICEF Program to FSB. The AP Invent PowerPoint presentation is attached as Exhibit D to the Henshaw Declaration.

25. On or about May 16, 2008, I met with Don and Shirley Medley, and Jack Reynolds (principals of Alvion Properties) and Brad Henshaw (Alvion Properties' FSB banker) in Nashville, Tennessee. During this meeting, I described an investment technology that I had invented called the "card game." I used a PowerPoint presentation and a binder with laminated cards to describe the technology. Upon seeing the demonstration, Henshaw informed me that he had seen the "card game technology" before via a demonstration from Weber, who claimed that he invented the "card game" despite the fact that it was Confidential Technology that I previously disclosed to Weber, and Chauveau, under the CNDA.

26. On or about September 30, 2008, I learned that Weber delivered information, including an agreement entitled "AGF Asset Management Agreement" to a third party named Tanglewood Development, LLC ("Tanglewood") in North Carolina, in an apparent attempt to legitimize himself and his financial expertise in an effort to secure the management of Tanglewood's real property assets. On or about November 21, 2008, I learned that Weber delivered information to Tanglewood on behalf of Defendant American Gulf Finance Corporation regarding "Real Estate Unit Participation Trust" and in which Weber solicited Tanglewood's participation in a fund involving Defendant AGF Realty Solutions, LLC and a trust entitled "AGFC Investment Banking Trust I," which Weber claimed held the assets of Alvion Properties.

27. The information disclosed to Tanglewood included content that I created including a detailed description of the Proprietary Technology, without mention of Melland, nTrust and/or me. I did not authorize Defendants to deliver or disclose the Confidential Technology to Tanglewood, nor did I authorize Weber or Defendant American Gulf Finance Corporation or Defendant AGF Realty Solutions, LLC to claim that the Proprietary Technology was their technology. Until learning of this unauthorized disclosure by Weber, I had never heard of

10 - DECLARATION OF ALLAIN DE LA MOTTE IN
    SUPPORT OF PLAINTIFFS' MOTION FOR
    PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

Tanglewood. A true and correct copy of the letter sent by Weber to Tanglewood is attached as Exhibit A to the Declaration of Jon S. Crouse, filed concurrently herewith.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

DATED: December 4, 2008

_____
Allain de la Motte

11 - DECLARATION OF ALLAIN DE LA MOTTE IN
SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

69726-0001/LEGAL14952780.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

BrainTrust Financial Centre (BFC) LLC

Mission Statement: To Ensure the Development, suitable Application and Endowment of Financial Intellectual Properties for Humanitarian and Commercial Objectives on an exclusive basis

1) What IP, existing or otherwise, is to be assigned to the BFC?
    a. Allain, please define the patent filings that are to be assigned
    b. Definition of derivative IP works; i.e. - future developments involving simultaneous escrow-based transactions
    c. Organizational structure (similar to an international law firm structure) with 3 initial founding managing partners consisting of Allain/Bob acting as one, Bernd & Claude
    d. How will managing partners be compensated?
    e. How will projects be treated that do not involve all four managing partners?
    f. How will future partners and/or associates be selected?
2) On what basis will future BFC partners and/or associates be hired and/or compensated? As consultants? As employees? Salaried? Commission?
3) How will the BFC's IP be licensed and/or made available to third-parties?
    a. Merrick et al – TLDC project
    b. Prometheus Capital Project
    c. Alvion Partners LLC
    d. Others...
4) What decisions process do we design to select the projects and funding for humanitarian projects?
5) Jurisdiction and ownership of LLC

**Exhibit A, Page 1**



**Exhibit B, Page 1**

the creativity braintrust centre to make money of the "patents" is in Toronto and NYC - so, let's work hard my friend - I am taking a break now and cook for Monda, I had my 9 hours already - therefore, I would suggest you give it a shot first and we get



6700 SW Sandburg Rd
Tigard, Oregon 97223

Office of
**Allain de la Motte**
Chairman
adlm@nTrustFinance.com
Tel: 503/437-3017
Fax: 503/213-7210

February 11, 2007

<u>Transmitted by E-mail</u>: berndhweber@sympatico.ca

Bernd H. Weber
55 Kingsbridge Garden Circle (Suite 702)
Mississauga, Ontario L5R 1Y1
Canada

Dear Bernd,

Your recent decision to terminate your business relationship with Melland Group, LLC, as announced to our New York law firm on Friday February 8, 2008, was received with much personal regret and sadness.

I write to confirm our acceptance of your resignation as Sr. Vice President - Project Development. We also accept your termination of the JV Agreement we have with your company, AGF. Please destroy any and all nTrust business cards that are still in your possession.

I would remind you that our Confidentiality, Non-Disclosure and Non-Utilization Agreement survives this termination. I also remind you that you have already assigned to us any and all rights, title and interest to any derivative IP work and that we will not hesitate to seek injunctive relief to prevent the unauthorized use of our IP and/or any derivative work thereof. We will also move decisively to quash any potential abuse of our proprietary IP with all remedies available to us at law.

We will continue to abide by the terms of the Consulting Agreement. If you, on behalf of the Alvion Properties, on the other hand, intend to do otherwise, please let us know at your earliest convenience in writing as required by the termination clause of the Consulting Agreement.

We believe that it would be mutually beneficial for us to discuss these issues. Please let us know when it would be a good time for us to have a conversation.

Sincerely,

Allain L. de la Motte

cc.   Robert M. West
      David Cooper, Esq.
      Ted Karr, Esq.
      Howard Skaist, Esq.
      James T. Hughes, Esq.
      Gerhard Anderson III, Esq.
      Stephen R. Field, Esq.

**Exhibit C, Page 1**

Intellectual Property Holding - Innovations in Structured Finance; Financial Products; Strategies for Wealth Creation; E-Commerce



6700 SW Sandburg Rd
Tigard, Oregon 97223

Office of
**Allain de la Motte**
Chairman
adlm@nTrustFinance.com
Tel: 503/437-3017
Fax: 503/213-7210

February 11, 2007

<u>Transmitted by E-mail</u>: cjc@timedatacorp.com

Claude J. Chauveau
447 West 56th Street (1st Floor)
New York, NY 10019

Time Data Corporation
c/o Claude J. Chauveau, CEO
447 West 56th Street (1st Floor)
New York, NY 10019

Dear Claude,

It is with much personal regret and deep sadness that I write to confirm our acceptance of your resignation as acting Chief Information Officer of Melland Group, LLC, dba nTrust. Please discard any business cards that remain in your possession. We have removed your Melland email addresses.

I would remind you that you personally, Time Data Corporation and its current President are all still bound by a Confidentiality, Non-Disclosure and Non-Utilization Agreement and that such agreement survives the termination of our business relationship.

It is extremely important for us to show anyone and everyone that any violation or challenge of our IP will have both a legal and financial consequence for would-be infringers or violators. Deterrence can only be achieved through an unbending resolve to pursue every legal means available at law each time we become aware of a problem or we suspect our IP is likely to suffer damage.

Our patent law firms have a stake in the successful prosecution of our IP portfolio and in its subsequent defense. For this reason, you will be hearing directly from them on the matters at hand.

Please immediately cease and desist using any of the material that belongs to Melland Group, and return to us any all material in your possession that pertains to our proprietary technology as well as a copy of any derivative material you have produced so far that has made use of our proprietary IP. Please also erase any material stored on electronic media on your computers and hard disks and provide us with an affidavit that any and all electronic files have been erased from your system and that there are no copies remaining anywhere. We request the same of anyone else with whom you have been working. We also request that you provide us with a list of any and all persons, companies or entities (with full contact details pertaining to each one) with whom you may have discussed our technology or shared our proprietary information to date.

Kind regards,

*[signature]*
Allain L. de la Motte

cc:   Robert M. West
      David Cooper, Esq.
      Ted Karr, Esq.
      Howard Skaist, Esq.
      James T. Hughes, Esq.
      Gerhard Anderson III, Esq.
      Stephen R. Field, Esq.

**Exhibit D, Page 1**

Intellectual Property Holding - Innovations in Structured Finance; Financial Products; Strategies for Wealth Creation; E-Commerce